DANIEL CATOIR v. THE AMERICAN LIFE INSURANCE AND TRUST COMPANY.

1. Where it is stipulated in a policy of insurance upon life, that a certain sum shall be paid at the time of the delivery of the policy, and a like sum paid quarterly thereafter, in each and every year, always in advance, and in case the party procuring the policy shall not pay the quarterly premiums on or before the several days specified for payment of the same, the policy to be void, and all payments and profits which may have accrued shall be forfeited to the company, the party is bound to a strict performance of the conditions of the policy, unless such performance is legally modified by the company.

2. The delay of payment for twenty-three days beyond the time when a premium became due, works a forfeiture of the policy, unless the party claiming the benefit of it shows that the company had legally waived or dispensed with the payment as it became due.

3. When the policy itself contains an express limitation upon the power of agents, an agent has no legal right to contract as against the company, with the party to whom the policy has been issued, so as to change the terms of the policy, or to dispense with the performance of any part of the consideration, either by parol or in writing; and such party is estopped by accepting the policy from setting up powers in the agent at the time, in opposition to limitations and conditions in the policy. These limitations are presumed to continue. In the face of a distinct written expression in the policy of a want of power in the agent, the party seeking to recover upon such policy has no right to infer the subsequent existence of such power by any uncertain signs. There must be evidence to justify the belief that the company, by direct authority, enlarged the powers of the agent beyond what they were as restricted in the policy, or that they knowingly permitted him to act for them beyond the scope of said powers.

Error to the Supreme Court.

This suit was brought in the Supreme Court to recover from the defendants the sum of two thousand dollars, on a certain policy of insurance issued by them on the 8th of March, 1864, insuring the life of Anna M. Catoir, wife of the plaintiff, for the term of her natural life. The declaration set forth the policy, with the consideration to be paid therefor, and the death of the said Anna, and avowed that he, the

said plaintiff, and the said Anna had, in all things, conformed to, observed, and performed all and singular the stipulations, matters, and things which on his part or on the part of the said Anna, were to be observed and performed, in and by the said policy and the conditions thereunto annexed, by means whereof, &c.

The defendants pleaded the general issue.

The case was tried at the Essex Circuit in May, 1867. After the evidence of the plaintiff had been moved and heard, the court being of opinion that the same was not sufficient to entitle him to maintain his action, ordered a non-suit, and that the plaintiff be called. To this decision the plaintiff excepted, and a bill of exceptions was accordingly sealed.

Judgment having been entered in the Supreme Court, the same was removed to this court, and the plaintiff assigned for error that the judge at the circuit erred in ordering him to be called, the evidence given being sufficient, both in law and in fact, to maintain his action.

The facts of the case, so far as they are material, are set forth in the opinion of the court.

For plaintiff in error, *N. Perry, Jr.*, and *C. Parker*.

For defendants, *E. Mercer Shreve* and *Thos. N. McCarter*.

BEDLE, J.   The writ of error in this case brings up a judgment of non-suit from the Essex Circuit. A bill of exceptions was allowed, and upon the authority of *Voorhees* v. *Woodhull's executors*, decided at this term,* the motion to dismiss the writ must be denied.

The sole question now for consideration is, whether the plaintiff, at the time he rested, had made out a sufficient case to entitle him to go to the jury. The suit is upon a policy of insurance for two thousand dollars, upon the life of Anna M. Catoir, the plaintiff's wife, for his benefit, issued by the defendants, a corporation so called in the city of Phil-

*Ante*, 484.

adelphia, and bearing date March 4th, A. D. 1864. Mrs. Catoir died April 7th, 1866. The insurance was for her life upon the consideration of the payment of eighteen dollars and ninety cents at the delivery of the policy, and of the further premium of eighteen dollars and ninety cents, to be paid quarterly thereafter, to wit, on the 8th day of June, September, December, and March, in each and every year, always in advance, during the continuance of the policy, and it was also expressly provided therein, that in case Daniel Catoir, the husband, shall not pay the quarterly premiums on or before the several days specified and appointed for the payment of the same, then the policy shall be void and of no effect, and all payments made, profits, &c., which may have accrued, shall be forfeited to the company. There can be no objection to a provision of this kind. It is salutary and wise for the solvency and success of corporations like the defendants. The insurance is accepted upon those terms. They form part of the written contract upon which the claim for the benefit of it is based, and the plaintiff is bound to a strict performance of them, unless such performance is legally modified by the company.

The last premium paid was June 8th, 1865. That kept the policy alive up to September 8th, 1865, on which day another premium became due and payable. That was not then paid, but was tendered to the agent of the company, at Newark, about twenty-three days afterwards, who refused to receive it, he having ascertained that Mrs. Catoir was sick. The result of the non-payment of that premium was to forfeit the policy, unless the plaintiff showed that the company had legally waived the payment as it became due. It was not claimed that the company had dispensed with the payment, at the time, by any written agreement or consent, but the tendency of the plaintiff's evidence was to show that Charles Knopf, who it was said was the general agent of the defendants, had orally consented about the time the third payment became due, which was December 8th, 1864, that the plaintiff could pay it afterwards *when he had it,* and that

from that time he had seen Mr. Knopf, and told him he could not pay to the day, and Mr. Knopf had said "don't be scared if the money is not ready by the day, when you send it down I will get you the receipt," and that the other payments after that were sometimes a week, sometimes two weeks afterwards, and that the receipts were brought back. This is the chief part of the plaintiff's case upon the fact or act of waiver. It will be seen at once, that it is an effort to show a verbal waiver of performance by an agent of the company in opposition to the terms of the written policy, and that under seal. It is not proposed now to discuss the effect of such verbal waiver when distinctly proved, and when made within the scope of an agent's authority. If Knopf, the agent of this company, had no authority in point of fact, express or implied, to make such waiver, that disposes of this case. In the policy there is a clause that the same shall not be valid until the actual payment of the premium has been made in cash, and receipted for at the bottom of the policy, by Charles Knopf, agent for Newark, N. J. The policy also refers to certain conditions and regulations printed on the back thereof, to which it, the policy, by express terms in the body, is subject, so far as the same can be applicable, in the same manner as if the same were respectively incorporated in the policy. These conditions, by force of that stipulation, became and are a part of the contract of insurance or policy. The first, third, and fifth of such conditions are as follows:

"1. Policies expire at noon on the last day of the period for which payment has been made.

"3. Agents are not authorized to make contracts for the company, nor to write upon the policy, except his signature, when necessary to the first receipt of premium, (see condition No. 5) nor to waive forfeiture of the same.

"The receipts for the premiums, excepting the first, (to be found on the face of this policy,) will invariably be given on a separate paper, and will not be valid without the seal of the company." The receipt for the first premium is endorsed upon the policy, and signed by Knopf as agent, in accordance

with these conditions. This, then, is the character of policy on which the plaintiff bases his suit. It contains an express limitation upon the power of agents. Knopf is termed such in the policy and receipt, and his authority was subject to those conditions. Whatever may have been his precise relation to the company as a medium through whom the insurance was effected, at the time the same was effected, and whatever may be the full scope of the declared inability of the agent *to make contracts for the company,* it is clear, that after the policy was obtained by the plaintiff, the agent had then no power to contract with him as against the defendants, to change the terms of the policy, or to dispense with the performance of any part of the consideration, even by writing, much less by word of mouth.

That part of the condition against making contracts, is not the only clause of limitation on the act of the agent sought to be enforced against the company in this case. The words "nor to waive forfeiture of the same," equally limits his power. To waive a forfeiture, it is not necessary that the forfeiture shall first have occurred. If the premium is not paid when due, the policy is void. The forfeiture results from the non-payment. If additional credit is legally given on the premium, that is, *ipso facto,* a waiver of the forfeiture. It is a waiver of the operation of the clause of the forfeiture in the policy. If the agent undertakes to give credit on the premium, he undertakes to waive forfeiture, and that this agent was restricted from doing when this policy was received by the plaintiff. At that time the company sought to protect itself from unauthorized acts of its agents by virtually declaring in what respect their powers were limited, and giving the plaintiff full notice thereof, in the policy. He is estopped by accepting the policy, from setting up in this case, powers in the agent at that time, in opposition to the limitation of the conditions. It being clear, from the policy, in what respect the authority of the agent was restricted at the time of the policy, there is nothing in the plaintiff's evidence to justify a jury in finding that any additional authority was

afterwards given by the company, either express or implied
to relieve the plaintiff from a strict payment of the pre-
mium when due.   There is no evidence even from which
it could legally be presumed that the company had any
knowledge of the short delay in the payment of some of the
preceding premiums by the plaintiff, and if any presumption
of such knowledge could exist, the effect is entirely de-
stroyed by the words in the margin of the receipt of June
8th, 1865, the last receipt of premium, that it is understood
and agreed that unless the next premium shall be paid on or
before the day it becomes due at 12 o'clock (noon) the policy
will be forfeited and void.   That Knopf countersigned the
receipt of June 8th, 1865, by *stamping* it with his name
as general agent, amounts to nothing against the company,
if for no other reason, because he, Knopf, is styled in the
receipt as agent, and the attesting clause is "witness the
seal of the said company, and the signature of the secretary,
countersigned by Charles Knopf, agent."   There is no evi-
dence of any knowledge on the part of the company, that
Knopf had styled himself general agent.   He certainly did
it against the requirement of the receipt in its attestation,
and the plaintiff had no right to deduce any new authority
from that.   In the face of a distinct written expression of a
want of power in the policy, the plaintiff has no right to
infer a power to the contrary against the company by any
uncertain signs.   The limitations are presumed to continue.
The case is entirely destitute of any evidence to justify the
belief, by the jury, that the company, by direct authority,
enlarged the powers of the agent beyond what they were as
restricted in the policy, or that they in any way knowingly
permitted him to act for them beyond the scope of such
powers.   This want of authority in the agent to relieve from
the payment of the premium when due, either by writing or
verbally, is a fatal defect in the plaintiff's claim, and it is
therefore deemed best to rest this decision upon that with-
out any discussion or determination of other questions, based
upon a different state of facts.   For this reason the court

Catoir v. American Life Ins. and Trust Co.

was bound to non-suit the plaintiff, and the judgment must be affirmed.

*For affirmance*—The CHANCELLOR, CHIEF JUSTICE, Justices ELMER, VREDENBURGH, BEDLE, DALRIMPLE, WOODHULL, WALES, CLEMENT, OLDEN.    10.

*For reversal*—Judges KENNEDY and OGDEN.    2.

CITED *in Mutual Benefit Life Ins. Co.* v. *Hillyard,* 8 *Vr.* 461, 482; *Hudson* v. *Knickerbocker Life Ins. Co.,* 1 *Stew.* 169.